# NC REAL AUCTIONS, LLC  Exhibit A

1000 Fate Washington Rd • Stem, NC 27581-9647

Office: (919) 528-2004
Cell Phone: (919) 616-4217
or: (919) 418-1132
Fax: (919) 528-2004

Email: NCRealAuctions@verizon.net
Web: www.ncrealauctions.com

## CONTRACT FOR AUCTION OF PERSONAL PROPERTY

THIS CONTRACT made _April 20_____, 20_10_, by and between _Robin Wagoner Tillery_ ("Seller") and _NC Real Auctions_ ("Auctioneer"), in consideration of their mutual promises and covenants herein, for Auctioneer to serve as Seller's agent and grants the Auctioneer the EXCLUSIVE RIGHT TO SELL certain personal property of Seller ("Property") at auction.

**Property-** (a) The property is located at _550 9 Old Hillsborough Rd / Old NC 10 , Durham, NC 27705_ and itemized on attached "Addendum A." (b) Auctioneer will have full access to the property beginning on _4-20_____, 20_10_.

**Auctioneer Warrants-** Auctioneer warrants: (a) to prepare and conduct the auction to Seller's advantage; (b) to provide the equipment, materials, and labor necessary for the auction, at Auctioneer's expense, except as provided herein; (c) to receive, disburse, and account for the auction proceeds; and (d) to do all other things herein agreed.

**Seller Warrants-** Seller warrants: (a) to lawfully own and possess the property, or otherwise be vested with the right to sell it and receive the proceeds; (b) to immediately convey possession and merchantable title of ownership to all buyers; (c) the property does not include dangerous, hazardous, harmful or illegal substances, has no hidden latent or patent defects, and poses no environmental, health, safety, or other hazard; (d) full compliance with all requirements of the General Statutes of North Carolina, United States Code, and all other applicable rules of law and regulations, whether local, state, or federal, to permit the sale of the property; (e) not to interfere with Auctioneer's work; (f) the property is not subject to the bulk sales, unless disclosed by Seller in a written notice attached to this contract giving all details; (g) the property is not subject to any lien, security interest, dispute of title, or other encumbrance, unless disclosed in a written notice attached to this contract giving all details; (h) to assist in preparing the property for auction, as requested by Auctioneer, and to do all things deemed necessary by Auctioneer to present the property in the most favorable light; (i) to accurately represent the property including but not limited to, its description, type, composition, quality, condition, and value; (j) to not bid on the property, either directly or indirectly; (k) maintain and provide premises in which said property is located and furnish light, water, telephone, license, personal and public liability insurance, and (l) to do all other things herein agreed.

**Auctioneer's Discretion-** (a) Auctioneer may organize the property into separate lots for sale and use discretion to do what is deemed appropriate to affect an advantageous sale, and (b) Auctioneer may decline to sell any property Auctioneer deems unsuitable for sale.

**No Guarantee-** Auctioneer makes no guarantees of any outcome or result from the auction.

**Seller's Choice-** Seller understands the auction can be conducted *without reserve* (i.e., each lot sells to highest bidder regardless of price). Seller has chosen to sell the property *without reserve*, unless "Addendum A" to this contract listing the property providing reserve for specific items.

**As Is, Where Is-** The property will be sold "As Is, Where Is" with no warranties, either expressed or implied, except as provided herein or by law.

**Date, Time, and Location-** The Auction will be conducted on _June 12_ 20_10_, at _10_ (a.m./p.m.) at _property location_.

**Marketing-** (a) Auctioneer may market the property, as it deems advisable, (b) Seller will pay Auctioneer a nonrefundable marketing cost of $ _2000.00_, and Seller's written permission will be obtained before any other cost is incurred for Seller's account beyond this amount, (c) Auctioneer may advance such cost and Seller will fully reimburse Auctioneer at settlement, (d) Seller's name may be used in any marketing to promote the auction, (e) Auctioneer has the right to place auction signs on the property to further advertise the auction, and it may remove other signs at its discretion.

**Seller's Expenses-** (a) In addition to all costs related to marketing, Seller is solely responsible for paying these costs: _Port A Jon for 1 day._

**Auctioneer's Commission and Buyer's Premium-** (a) Seller will pay Auctioneer a selling commission of _20_ percent of the gross amount for which the property is sold, exclusive of sales tax and buyer's premium, (b) auctioneer is entitled to charge and keep as an additional commission _10_ percent buyer's premium that auctioneer will add to the amount of the highest bid for each lot sold and collect from the respective buyers, (c) Auctioneer is entitled to charge and keep as an additional commission a _5_ percent buyer's premium that Auctioneer will add to the amount of the highest bid for each lot sold and collect from any buyer who pays with a credit card, and (d) the selling commission and buyer's premium will also apply to the sale of any property made by Auctioneer, with Seller's approval, before or after the auction.

**Payments-** (a) Auctioneer may accept payment from buyers in the form of cash, major credit cards typically accepted by Auctioneer, certified funds, bank checks, and personal checks with proper identification (b) Auctioneer has no responsibility for collection of any payment that is not good or completed for any reason, and (c) Auctioneer will deposit all payments received in its Bank Trust Account until settlement.

**Withdrawn Property-** (a) If any of the property is withdrawn from the auction for any reason, Seller will immediately pay Auctioneer a fee of _0_ percent of the fair market value of the withdrawn property, as liquidated damages ('withdrawal commission").

**Cancellation-** (a) If the auction is canceled for any reason not caused by Auctioneer including, but not limited to, the commencement of legal action or court order, Seller will immediately pay Auctioneer a fee of _0_ percent of the fair market value of the property that remains unsold, as liquidated damages ("cancellation commission"), (b) if Auctioneer has advertised the auction prior to the notice to cancel, Seller agrees the cancellation will have a negative impact on Auctioneer's reputation and business so Seller will immediately pay Auctioneer a cancellation commission of _0_ percent of the fair market value of the property that remains unsold, plus a reasonable sum to advertise and otherwise give public notice of the cancellation, as liquidated damages.

**Accounting and Settlement-** (a) Auctioneer will provide Seller with a written accounting of all funds received and disbursed, (b) Auctioneer will disburse the net proceeds due to Seller after deducting and keeping its selling commission, buyer's premium, all costs chargeable to Seller, withdrawal, commission, and any cancellation commission. (c) Auctioneer will account and make disbursement to Seller within _30_ days after completion of the auction, (d) Seller agrees that all expenses and auction commissions shall be deducted before payment of any liens, (e) State sales tax will/will not be collected at this auction, and if so, will be remitted by the **Auctioneer/Seller.**

**Hold Harmless and Indemnification-** (a) Seller warrants to hold Auctioneer harmless from, and indemnify Auctioneer against, any claim, action or suit, cost, damage, deficiency, expense, loss or liability of every kind, including attorneys' fees and costs of defense, asserted by any person, real or artificial, or by an entity of government, that Auctioneer incurs in connection with the offering or sale of the property.

**Binding Effect-** This contract is fully binding upon the parties and their administrators, agents, assigns, attorneys, beneficiaries, devisees, heirs, legatees, representatives, and successors in interest.

**Choice of Law and Venue-** (a) This contract will be construed and governed solely in accordance with the laws of the State of North Carolina, and (b) the exclusive venue for any controversy of claim between parties will be the County/City of _Granville_ North Carolina.

**Partial Invalidity-** (a) If any term of this contract is later held illegal, invalid, or unenforceable, all other provisions will continue in full force and not be affected by the illegal, invalid, or unenforceable provision, or by its severance from this contract, and (b) in lieu of any illegal, invalid, or unenforceable provisions, there will automatically be added to the contract a provision as similar in terms to the illegal, invalid, or unenforceable provision, as may be legal, valid, and enforceable.

**Entire Agreement-** (a) This contract contains the entire undertaking between the parties and there are no oral or written agreements, inducements, promises, representations, or warranties other than those expressly set forth herein, (b) a modification or waiver of any of the provisions of this contract will be effective only if made in writing and executed with the same formality as this contract, and (c) the failure of either party to insist upon the strict performance of any of the provisions of this contract will not be construed as a waiver of any subsequent default of the same or similar nature. _Seller authorizes auctioneer to sell consignments at auction._

### THIS IS A LEGALLY BINDING CONTRACT. IF NOT UNDERSTOOD, SEEK COMPETENT ADVICE.

Each party acknowledges that it has read and fully accepted the terms of this contract and received a fully executed copy.

_Robin Wagoner Tillery_
Seller(s) (print)

_Rod M. ... -Tillery_
Seller(s) (signature)

_5509 Old Hillsborough Rd, Durham NC_  _27705_
Seller(s) Address

_919-383-2865_
Seller(s) Telephone No.

_919 998-8125_
Seller(s) Cell Phone No.

_____
Seller(s) E-mail Address

NC REAL AUCTIONS, LLC
NC Auction Firm License No. _8470_

_____
Auctioneer/Auction Firm Agent (signature)
1000 Fate Washington Road
Stem, NC 27581-9647
(919) 528-2004- Office
(919) 616-4217 or (919) 418-1132- Cell
NCRealAuctions@verizon.net

# NC REAL Auctions, LLC
## 1000 Fate Washington Road
## Stem, NC 27581
**Phone: 919-616-4217, Fax: 919-528-4564**

# Exhibit

# B

## EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT
## AUCTION SALES

**NOTE: This form is designed for use where the listing firm may sell the property either at or outside of a public auction. This form should be used only by those who hold a current, valid real estate broker's license, auctioneer's license and appropriate firm licenses, if applicable.**

This EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT ("Agreement") is entered into (Date) _4-20-2010_, between

_Robin Wagoner Tilley_

as Seller(s) ("Seller") of the property described below (the "Property"), and _NC REAL Auctions, LLC_ as Listing Firm ("Broker").

**1. EXCLUSIVE RIGHT TO SELL.** For a period extending from (Date) _4-20-2010_ until midnight, (Date) _7-31-2010_, Broker shall have the exclusive right to sell the Property as agent of Seller at the price and on the terms set forth below. The auction will be conducted at _5509 Old Hillsborough Rd/Old NC 10_ (Location), _Durham, NC 27705_ (Street Address), on or before the _12_ day of _June_, at _10_ ☑ A.M. ☐ P.M. At such time and place, Broker, in its sole discretion, may accept for sale other consigned properties. Unless otherwise provided, all consigned properties shall be advertised at no expense to Seller and no commissions or fees due Broker from Seller shall be diminished by any commission or fee received on consigned properties.

**2. REAL PROPERTY.** The real property that is the subject of this Agreement is located in _Orange_ County, North Carolina, and is known more particularly and described as (Complete ALL applicable):
Address: Street _5509 Old Hillsborough Rd/Old NC 10_ City _Durham_ Zip _27705_
Legal Description _House + 20.58 Acres Tract 76 4085_
Subdivision Name: _N/A_
Plat Reference: Lot _____, Block or Section _____, containing _____ acres as shown on Plat Book or Slide _____ at Page(s) _____
The PIN/PID or other identification number of the Property is: _9892-99-1685_
Some or all of the Property may be described in Deed Book _87_ at Page _97_.

☐ See attached Exhibit _____ for legal description/description of premises.

If more than one parcel of real property is the subject of this Agreement, the term "Property" as used herein shall be deemed to refer to all such parcels individually or collectively as the context may require unless specifically indicated otherwise.

Mineral rights ☑ are ☐ are not included.

Timber rights ☑ are ☐ are not included.

**3. FIXTURES.** The following items, if any, and if owned by the Seller, are included free of liens: any built-in appliances, light fixtures, ceiling fans, attached floor coverings, blinds, shades, drapery rods and curtain rods, brackets and all related hardware, window and door screens, storm windows, combination doors, awnings, antennas, satellite dishes and receivers, burglar/fire/smoke alarms, pool and spa equipment, solar energy systems, attached fireplace screens, gas logs, fireplace inserts, electric garage door openers with controls, outdoor plants and trees (other than in movable containers), basketball goals, storage sheds, mailboxes, wall and/or door mirrors, attached propane gas tank, invisible fencing including all related equipment, lawn irrigation systems and all related equipment, water softener/conditioner and filter equipment, and any other items attached or affixed to the Property, EXCEPT any such items leased by the Seller and the following items: _N/A_

**4. PERSONAL PROPERTY.** The following personal property is included in the sale price:

**5. BROKER AGENCY RELATIONSHIPS AND COOPERATION WITH/COMPENSATION TO OTHER FIRMS.** Seller has received the "Working with Real Estate Agents" publication and has reviewed it with Broker. In the case of a sale of the Property at auction, Broker will act exclusively as agent of the Seller. In the case of a sale of the Property other than at auction, with respect to dual agency (check only ONE):



**PREPARED BY: Ron Daniels, Broker in Charge**

STANDARD FORM 601 Revised 10/2009 © 10/2009. North Carolina Association of REALTORS®, Inc.

RealFAST® Software, ©2010. Version 6.16. Software Registered to: Office Manager, NC REAL Auctions, LLC

Broker Initials _____

Case 09-80912    Doc 51-1    Filed 06/03/10    Page 2 of 21

Page 1 of 8
Seller Initials _____

☐ Seller authorizes Broker to act as a Dual Agent, representing both the Seller and the Buyer in the same transaction, subject to the terms and conditions of the attached Dual Agency Addendum.

☑ Seller desires exclusive representation at all times during this Agreement and does NOT authorize Broker to act in the capacity of Dual Agent.

Broker has advised Seller of Broker's company policies regarding cooperation and the amount(s) of any compensation that will be offered to other brokers, including but not limited to, seller subagents, buyer agents or both, brokers who do or do not participate in a listing service and brokers who are or are not REALTORS®. Seller authorizes Broker to compensate and cooperate with the following: (CHECK ALL APPLICABLE AGENCIES):

☑ Subagents representing the Seller

☐ Buyer Agents representing the Buyer

Broker shall inquire of all cooperating agents at the time of initial contact as to their agency status. A written confirmation of agency shall be provided to Seller no later than the time of the presentation to Seller of any contract pursuant to this Agreement or, in the case of an auction sale, no later than the time of execution of a written agreement memorializing the buyer's contract to purchase.

**6. AUCTION.**
**(a) Authority.** Seller authorizes the Broker to sell the Property at auction in the manner set forth herein.
**(b) Auction With Or Without Reserve.**
- Without Reserve. An auction without reserve, also known as an absolute auction, means an auction where the real or personal property offered for auction is sold to the highest bidder (i) without the requirement of any minimum bid; (ii) without competing bids of any type by a seller or agent of a seller; and (iii) without any other limiting condition of sale.
- With Reserve. An auction with reserve, also known as a sale subject to confirmation (this does not mean confirmation by a court, only acceptance by the seller) means an auction in which a seller reserves the right to establish a minimum bid, to accept or decline any and all bids or to withdraw the property at any time prior to the announcement of the completion of the sale by the broker. In the event that the high bid at auction does not meet Seller's reserve price, then Seller pays Broker an agreed-upon "no sale fee" in addition to any other fees and commissions payable by Seller under this Agreement.

☑ SINGLE PARCEL. If a single parcel of real property is the subject of this Agreement, any auction will be conducted (check only ONE):
  ☐ Without Reserve   *Reserve Determined by US Bankruptcy Court*
  ☑ With Reserve (Reserve Price: $ _____ No Sale Fee: $ _____ )
  ☐ Determined At Later Time. Seller and Broker agrees that a decision as to whether the Property shall be auctioned With Reserve or Without Reserve (including the Reserve Price and No Sale Fee if auctioned With Reserve) shall be made at a later time by Seller in consultation with Broker, based on the circumstances existing at or around the time of any such auction.

☐ MULTIPLE PARCELS. If more than one parcel of real property is the subject of this Agreement, any such parcel will be auctioned With Reserve or Without Reserve as set forth in the attached Multi-Parcel Addendum.

**(c) Live And/Or Online Auction.** As defined by N.C.G.S. Section 85B-1(1), "auction means the sale of goods or real estate by means of exchanges between an auctioneer and members of an audience, the exchanges consisting of a series of invitations for offers made by the auctioneer, offers by members of the audience, and the acceptance by the auctioneer of the highest or most favorable offer." An auction may be a traditional "live" auction in which the auctioneer and the members of the audience may hear each other, or it may be conducted online by means of electronic exchanges between the auctioneer and an members of an audience who submit bids via the Internet, or it may be conducted by a combination of live and online means.

☑ SINGLE PARCEL. If a single parcel of real property is the subject of this Agreement, any auction will be conducted (check only ONE):
  ☑ Live
  ☐ Online
  ☐ Live/Online Combination

☐ MULTIPLE PARCELS. If more than one parcel of real property is the subject of this Agreement, any such parcel will be auctioned live and/or online as set forth in the attached Multi-Parcel Addendum.

**7. COMMISSIONS.** (Note: For purposes of this paragraph 7, the term "Property" shall be deemed to refer to each individual parcel of real property that may be the subject of this Agreement.)

(a) **Sale Of Property At Auction.** (check only ONE)
  *RWT*
  *RVD*
  ☐ ~~Seller shall pay Broker~~ ___5___ ~~% of the bid price of the Property.~~

☑ Seller shall pay Broker ___5___ % of the contract price of the Property.

☐ OTHER. Seller shall pay Broker as follows:

**(b) Buyer's Premium At Auction.**

☐ Seller authorizes Broker to charge a buyer's premium in the amount of_____ % of the bid price, to be included in the contract price, and: (check only ONE)

   ☐ Seller will collect and pay over the buyer's premium to Broker, in addition to any compensation due Broker under Section 7(a) above.
   ☐ Seller will collect and retain the buyer's premium as part of the contract price.

☒ Seller does not authorize Broker to charge a buyer's premium.

**(c) Sale Of Property Other Than At Auction.** If the Property is sold during the term of this Agreement on any day other than the day of the auction, Seller shall pay Broker___5___ % of the gross sales price of the Property or

**(d) General Commissions Provisions.** Commissions shall be deemed earned under any of the following circumstances:
   (i) If a ready, willing and able buyer is procured by Broker, Seller, or anyone else during the term of this Agreement at the price and on the terms set forth herein, or at any price and upon any terms acceptable to the Seller;
   (ii) If the Property is sold, exchanged, conveyed or transferred, or the Seller agrees to sell, exchange, convey or transfer the Property at any price and upon any terms whatsoever, during the term of this Agreement or any renewal hereof;
   (iii) If, within ___30___ days after expiration of the term of this Agreement (the "Protection Period"), Seller either directly or indirectly sells, exchanges, conveys or transfers, or agrees to sell, exchange, convey or transfer the Property upon any terms whatsoever, to a party with whom Seller or Broker (or any agent acting for or through Broker) communicated regarding the Property during the term of this Agreement or any renewal hereof, then Seller shall pay Broker the commission provided for in Section 7(c); provided, that names of prospects are delivered or postmarked to the Seller within ___7___ days after the expiration of this Agreement. In the event the Property is exclusively listed for sale with another agency after the expiration of this Agreement and a registered prospect options or contracts to purchase the Property during the Protection Period, then the Seller shall pay to the Broker ___5___ % of the commission provided for in Section 7(c). It is not Broker's intention to hereby obligate Seller to pay two commissions; Seller should insure that any prospects registered pursuant to this Section are excluded from any subsequent listing agreement.

Once earned as set forth above, Broker compensation will be due and payable at the earlier of: (i) closing on the Property; (ii) the Seller's failure to sell the Property (including, but not limited to, the Seller's refusal to accept a bid or offer to purchase the Property at the price and terms stated herein or on other terms acceptable to the Seller, the Seller's default on an executed sales contract for the Property, or the Seller's agreement with a buyer to unreasonably modify or cancel an executed sales contract for the Property); or (iii) Seller's breach of this Agreement.

If Seller is a partnership, corporation or other business entity, and an interest in the partnership, corporation or other business entity is transferred, whether by merger, outright purchase or otherwise, in lieu of a sale of the Property, and applicable law does not prohibit the payment of a commission in connection with such sale or transfer, the commission shall be calculated on the fair market value of the Property, rather than the gross sales price, multiplied by the percentage of interest so transferred, and shall be paid by Seller at the time of the transfer.

If Broker is the prevailing party in any legal proceeding brought by Broker against Seller to recover any or all of the commission set forth herein, Broker shall be entitled to recover from Seller reasonable attorney fees and court costs incurred by Broker in connection with the proceeding.

**8. MARKETING FEE.** In addition to any other fees and commissions payable by Seller under this Agreement, Seller shall pay Broker a marketing fee in the amount of $ ___0___ payable ☐ at closing ☐ upon execution of this Agreement. In the event an auction is rescheduled through no fault of the Broker, then Seller shall reimburse Broker for actual expenses incurred in rescheduling the auction.

**9. SELLER'S DUTIES.** Seller shall cooperate with Broker in the marketing and sale of the Property, including, but not limited to:
(a) If the Property is sold during the term of this Agreement, executing and delivering bills of sale and a (check only ONE) ☐ GENERAL WARRANTY DEED ☑ OTHER: ___Real Estate Deed___ conveying fee simple marketable and insurable title to the Property, including legal access to a public right of way, free of all encumbrances except ad valorem taxes for the current year, utility easements, rights-of-way, and unviolated restrictive covenants, if any, and those encumbrances that the buyer agrees to assume in the sales contract. Seller represents that the Seller has the right to convey the Property, and that there are currently no circumstances that would prohibit the Seller from conveying fee simple marketable and insurable title as set forth in the preceding sentence;
(b) Paying the following expenses of conveyance: (i) Revenue Stamps; (ii) Deed Preparation; and (check all that apply)
☐                    ☐            ☐                                                              ☐

**PREPARED BY: Ron Daniels, Broker In Charge**
STANDARD FORM 601 Revised 10/2009 © 10/2009. North Carolina Association of REALTORS®, Inc.
RealFAST® Software, ©2010, Version 6.16. Software Registered to: Office Manager, NC REAL Auctions, LLC
Broker Initials _____

Seller Initials _____

Termite Inspection Report;  Survey;  Soil test(s) to determine septic system suitability;  Planning Board, subdivision and re-zoning fees;  ☐ clean-up of the Property, including mowing and trash removal;  ☐ Title opinion for the benefit of the Seller; and ☐ Other: ___N/A___

(c) Providing an accurate description of the Property to the Broker;
(d) Informing Broker of any encumbrances that are placed on the Property on or after the date of this Agreement, within_____ days of the encumbrance;
(e) Obtaining releases of any and all encumbrances on the Property;
(f) Reimbursing Broker for any expense actually incurred by Broker as a result of an advance made by the Broker on behalf of Seller in furtherance of this Agreement;
(g) Being present at the time and place of auction sale and assist Broker in the sale of the Property;
(h) Making known to Broker or any prospective purchasers any defects in the Property;
(i) Making the Property available for showing (including working, existing utilities) at reasonable times and upon reasonable notice;
(j) Providing Agent, as soon as reasonably possible after the execution of this Agreement, copies of leases affecting the Property, if any, restrictive covenants, if any, and copies of the bylaws, articles of incorporation, rules and regulations and other governing documents of the owners' association and/or the subdivision, if applicable;
(k) Referring all inquiries or offers regarding the Property to Broker;
(l) (check if applicable) ☑ Providing to Broker, in a timely manner, the North Carolina Residential Property Disclosure Statement; and
(m) (check if applicable) ☑ Providing a Lead-Based Paint and/or Lead-Based Paint Hazards Disclosure with respect to any residential dwelling built prior to 1978.

To the best of Seller's knowledge, the Property has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system," commonly known as "EIFS" or "synthetic stucco", unless disclosed as follows *(if Seller does not wish to disclose, put No Representation)*: ___N/A___ .

No management services, repair services, collection services, notices or tax services shall be implied as being provided by Broker by this Agreement. In the event that Broker does procure any of these services at the request of Seller, it is understood and agreed that Broker shall only be acting in the capacity of procurer for Seller and shall accrue no liability or responsibility in connection with any services so obtained on behalf of Seller. This exclusion of liability and responsibility shall not apply in the event that Broker directly contracts with Seller to provide any such service. Seller further acknowledges that Agent is being retained solely as a real estate professional, and understands that other professional service providers are available to render advice or services to Seller at Seller's expense, including, but not limited to, an attorney, insurance agent, tax advisor, surveyor, structural engineer, home inspector, environmental consultant, architect, or contractor.

**10. OWNERS' ASSOCIATION.** There ☐ is ☒ is not an owners' association. If there is an owners' association, then it is recommended that the Seller provide to Broker a completed Form 2A12-T (Owners' Association Disclosure and Addendum). The name, address and telephone number of the President of the owners' association or the Property Manager is: ___N/A___

**11. BROKER'S DUTIES.** Broker agrees to provide Seller the benefit of Broker's knowledge, experience and advice in the marketing and sale of the Property. Seller understands that Broker makes no representation or guarantee as to the sale of the Property, but Broker agrees to use best efforts in good faith to find a buyer who is ready, willing and able to purchase the property. Seller acknowledges that Broker is required by law to disclose to potential purchasers of the Property all material facts pertaining to the Property about which the Broker knows or reasonably should know, and that REALTORS® have an ethical responsibility to treat all parties to the transaction honestly.

Broker shall do the following:
(a) Schedule auction(s) at appropriate times;
(b) Provide experienced and qualified personnel for the auction sale;
(c) Document all records of the auction sale; and
(d) Comply with all provisions of law in obtaining the highest sales price.

**12. MARKETING:** Seller authorizes Broker *(Check ALL applicable sections)*:
  ☑ **Signs.** To place "For Sale," "Auction," "Under Contract," "Sale Pending," or other similar signs on the Property and/or upon Seller's other properties (where permitted by law and relevant covenants) and to remove other such signs.
  ☑ **Lock/Key Boxes.** To place a lock/key box on the Property.
  ☑ **Open Houses.** To conduct open houses of the Property at such times as Seller and Broker may subsequently agree.
  ☑ **Listing Service.** To submit pertinent information concerning the Property to any listing service of which Broker is a member or in which any of Broker's agents participate and to furnish to such listing service notice of all changes of information concerning the Property authorized in writing by Seller. Seller authorizes Broker, upon execution of a sales contract for the Property, to notify the listing service of the pending sale, and upon closing of the sale, to disseminate sales information, including sales price, to the listing service, appraisers and real estate brokers.
  ☑ **Advertising Other Than On The Internet.** To advertise the Property in non-Internet media, and to permit other firms to advertise the Property in non-Internet media to the extent and in such manner as Broker may decide.
  ☑ **Internet Advertising.** To display information about the Property on the Internet either directly or  through a program of

any listing service of which the Broker is a member or in which any of Broker's agents participate, and authorizes other firms who belong to any listing service of which the Broker is a member or in which any of Broker's agents participate to display information about the Property on the Internet in accordance with the listing service rules and regulations*f Seller does not authorize Internet Advertising as set forth above, Seller MUST complete an opt-out form in accordance with listing service rules. (NOTE: NCAR Form #105 may be used for this purpose.)*

If Seller authorizes Internet Advertising as set forth above, Seller further authorizes the display *Check ALL applicable sections):*

☑ The address of the Property
☑ Automated estimates of the market value of the Property
☑ Third-party comments about the Property

Seller acknowledges and understands that while the marketing services selected above will facilitate the showing and sale of the Property, there are risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of the Broker, including but not limited to:
1. unauthorized use of a lock/key box,
2. control of visitors during or after a showing or an open house,
3. inappropriate use of information about the Property placed on the Internet or furnished to any listing service in which the Broker participates.

Seller therefore agrees to indemnify and hold harmless Broker from any damages, costs, attorneys' fees and other expenses as a result of any personal injury or property loss or damage to Seller or any other person not caused by Broker's negligence arising directly or indirectly out of any such marketing services.

**13. EARNEST MONEY DEPOSITS.** Unless otherwise provided in the sales contract, earnest money deposits paid toward the purchase price shall be made payable to Broker as agent of Seller and held by Broker in an escrow account until the consummation or termination of the transaction. Any earnest money forfeited by reason of buyer's default under a sales contract shall be divided equally between Broker and Seller. In no event shall the sum paid to Broker because of a buyer's default exceed the commission that would have been due if the sale had closed as contemplated in the contract. Likewise, the sum paid to Broker because of a buyer's default shall not decrease the commission payable to Broker as a result of the subsequent sale of the Property.

**14. ENVIRONMENTAL MATTERS:** Seller, directly or through whom a claim may be made by any other party or parties against the Broker, shall indemnify, defend and hold harmless the Broker, its agents and employees from any loss, liability, damage, cost or expense, including without limitation reasonable legal, accounting, consulting, engineering, court costs and other expenses, related to the presence of storage tanks or the presence or release of hazardous substances, materials and wastes, including, but not limited to, those substances, materials and wastes which are listed in the United States Department of Transportation Hazardous Materials Table or by the Environmental Protection Agency as hazardous substances and those that are or become regulated under any applicable local, state or federal law.

**15. BANKRUPTCY:** In the event that the Property comes under the jurisdiction of a bankruptcy court, Seller shall immediately notify Broker of the same and if Seller is the subject of bankruptcy, shall promptly take all steps necessary to obtain court approval of Broker's appointment to sell the Property, unless Broker shall elect to terminate this Agreement upon said notice.

**16. REPRESENTATIONS:** Seller represents and warrants to Broker that it has the right to offer the Property for sale and further represents and warrants that it has the right and authority to execute and deliver such instruments as may be necessary to effectuate any transaction contemplated hereby.

**17. INDEMNIFICATION:** Seller represents and warrants that the information set forth herein and any other information as may be furnished by the Seller is correct to the best of Seller's knowledge; Broker shall have no obligation or responsibility for checking or verifying any such information. Further, Seller agrees to indemnify Broker for any and all loss or damage sustained by Broker as a result of Broker's or Seller's furnishing such information to a buyer or anyone else.

**18. PARTIES AND BENEFIT:** This Agreement shall be binding upon and inure to the benefit of the parties, their heirs, successors and assigns and their personal representatives. Each signatory to this Agreement represents and warrants that he or she has full authority to sign this agreement on behalf of the party for whom he or she signs and that this Agreement binds such party.

**19. MEDIATION.** If a dispute arises out of or related to this Agreement or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation before resorting to arbitration, litigation, or some other dispute resolution procedure. If the need for mediation arises, the parties will choose a mutually acceptable mediator and will share the cost of mediation equally. The mediation will take place at a mutually acceptable location in the city where the Broker's Office Address is located unless otherwise indicated as follows:

**20. ADDITIONAL TERMS AND CONDITIONS.** The following additional terms and conditions shall also be a part of this Agreement:
~/~

**21. ENTIRE AGREEMENT/CHANGES.** This Agreement constitutes the entire agreement between the parties and there are no representations, inducements, or other provisions other than those expressed herein. All changes, additions, or deletions to this Agreement must be in writing and signed by the parties.

**THE AGENT SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT.**

**Seller and Broker each acknowledge receipt of a signed copy of this Agreement.**

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. MAKES NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION.

SELLER _Rch Wig Tilley_ DATE _4/20/2010_

SELLER _____ DATE _____

Mobile Phone _919-998-8125_ E-mail _____

NC REAL Auctions, LLC
1000 Fate Washington Road
Stem, NC 27581
Phone: 919-616-4217, Fax: 919-528-4564

By: _____ _4/20/2010_
Signature   Ron Daniels      Date

Individual license #: _80510_
E-mail _NC Real Auctions @ verizon.net_

PREPARED BY: Ron Daniels, Broker in Charge
STANDARD FORM 601 Revised 10/2009 © 10/2009. North Carolina Association of REALTORS®, Inc.
RealFAST® Software, ©2010, Version 6.15. Software Registered to: Office Manager, NC REAL Auctions, LLC
Case 09-80912   Doc 31-1   Filed 08/03/10   Page 7 of 21
Page 6 of 6
Broker Initials



# STATE OF NORTH CAROLINA
## RESIDENTIAL PROPERTY DISCLOSURE STATEMENT

### INSTRUCTIONS TO PROPERTY OWNERS

1. G.S. 47E requires owners of residential real estate (single-family homes and buildings with up to four dwelling units) to furnish purchasers a property disclosure statement. This form is the only one approved for this purpose. A disclosure statement must be furnished in connection with the sale, exchange, option and sale under a lease with option to purchase (unless the tenant is already occupying or intends to occupy the dwelling). A disclosure statement is not required for some transactions, including the first sale of a dwelling which has never been inhabited and transactions of residential property made pursuant to a lease with option to purchase where the lessee occupies or intends to occupy the dwelling. For a complete list of exemptions, see G.S. 47E-2.

2. You must check one of the boxes for each of the 21 questions on the reverse side of this form.

   a. If you check "Yes" for any question, you must explain your answer and either describe the problem or attach a report from an engineer, contractor, pest control operator or other expert or public agency describing it. If you attach a report, you will not be liable for any inaccurate or incomplete information contained in it so long as you were not grossly negligent in obtaining or transmitting the information.

   b. If you check "No", you are stating that you have no actual knowledge of any problem. If you check "No" and you know there is a problem, you may be liable for making an intentional misstatement.

   c. If you check "No Representation", you have no duty to disclose the conditions or characteristics of the property, even if you should have known of them.

   * If you check "Yes" or "No" and something happens to the property to make your Statement incorrect or inaccurate (for example, the roof begins to leak), you must promptly give the purchaser a corrected Statement or correct the problem.

3. If you are assisted in the sale of your property by a licensed real estate broker, you are still responsible for completing and delivering the Statement to the purchasers; and the broker must disclose any material facts about your property which they know or reasonably should know, regardless of your responses on the Statement.

4. You must give the completed Statement to the purchaser no later than the time the purchaser makes an offer to purchase your property. If you do not, the purchaser can, under certain conditions, cancel any resulting contract (See   "Note to Purchasers"   below). You should give the purchaser a copy of the Statement containing your signature and keep a copy signed by the purchaser for your records.

**Note to Purchasers:** If the owner does not give you a Residential Property Disclosure Statement by the time you make your offer to purchase the property, you may under certain conditions cancel any resulting contract and be entitled to a refund of any deposit monies you may have paid. To cancel the contract, you must personally deliver or mail written notice of your decision to cancel to the owner or the owner's agent within three calendar days following your receipt of the Statement, or three calendar days following the date of the contract, whichever occurs first. However, in no event does the Disclosure Act permit you to cancel a contract after settlement of the transaction or (in the case of a sale or exchange) after you have occupied the property, whichever occurs first.

5. In the space below, type or print in ink the address of the property (sufficient to identify it) and your name. Then sign and date.

Property Address: _5509 Old Hilkboro, LRd / Old NC 10, Durhen NC 27705_

Owner's Name(s): _Robin Wagoner Tilley_

Owner(s) acknowledge having examined this Statement before signing and that all information is true and correct as of the date signed.

Owner Signature: _Robin Wagoner Tilley_                Date _4/20/2010_

Owner Signature: _____              Date _____

Purchaser(s) acknowledge receipt of a copy of this disclosure statement; that they have examined it before signing; that they understand that this is not a warranty by owner or owner's agent; that it is not a substitute for any inspections they may wish to obtain; and that the representations are made by the owner and not the owner's agent(s) or subagent(s). Purchaser(s) are encouraged to obtain their own inspection from a licensed home inspector or other professional.

Purchaser Signature: _____             Date _____

Purchaser Signature: _____             Date _____

---

Property Address/Description: _5509 Old Hillsboro, Rd / Old NC 10, Durhen, NC 27705_

*[Note: In this form, property refers only to dwelling unit(s) and not sheds, detached garages or other buildings.]*

**Regarding the property identified above, do you know of any problem (malfunction or defect) with any of the following:**

|  | Yes* | No | No Representation |
|---|---|---|---|
| 1. FOUNDATION, SLAB, FIREPLACES/CHIMNEYS, FLOORS, WINDOWS (INCLUDING STORM WINDOWS AND SCREENS), DOORS, CEILINGS, INTERIOR AND EXTERIOR WALLS, ATTACHED GARAGE, PATIO, DECK OR OTHER STRUCTURAL COMPONENTS including any modifications to them? | ☐ | ☐ | ☐ |
| a.   Siding is ☐ Masonry ☐ Wood ☐ Composition/Hardboard ☐ Vinyl ☐ Synthetic Stucco ☐ Other _____ |  |  |  |
| b.   Approximate age of structure? _____ |  |  |  |
| 2. ROOF (leakage or other problem)? _____ | ☐ | ☐ | ☐ |
| a.   Approximate age of roof covering? _____ |  |  |  |
| 3. WATER SEEPAGE, LEAKAGE, DAMPNESS OR STANDING WATER in the basement, crawl space or slab? _____ | ☐ | ☐ | ☐ |
| 4. ELECTRICAL SYSTEM (outlets, wiring, panel, switches, fixtures, etc.)? _____ | ☐ | ☐ | ☐ |
| 5. PLUMBING SYSTEM (pipes, fixtures, water heater, etc.)? _____ | ☐ | ☐ | ☐ |
| 6. HEATING AND/OR AIR CONDITIONING? _____ | ☐ | ☐ | ☐ |
| a.   Heat Source is: ☐ Furnace ☐ Heat Pump ☐ Baseboard ☐ Other _____ |  |  |  |
| b.   Cooling Source is: ☐ Central Forced Air ☐ Wall/Window Unit(s) ☐ Other _____ |  |  |  |
| c.   Fuel Source is: ☐ Electricity ☐ Natural Gas ☐ Propane ☐ Oil ☐ Other _____ |  |  |  |
| 7. WATER SUPPLY (including water quality, quantity and water pressure)? _____ | ☐ | ☐ | ☐ |
| a.   Water supply is: ☐ City/County ☐ Community ☐ Private Well ☐ Other _____ |  |  |  |
| b.   Water pipes are: ☐ Copper ☐ Galvanized ☐ Plastic ☐ Other ☐ Unknown _____ |  |  |  |
| 8. SEWER AND/OR SEPTIC SYSTEM? _____ | ☐ | ☐ | ☐ |
| a.   Sewage disposal system is: ☐ Septic Tank ☐ Septic Tank with Pump ☐ Community System ☐ Connected to City/County System ☐ City/County System available ☐ Straight pipe (wastewater does not go into a septic or other sewer system [note: use of this type of system violates state law]) ☐ Other _____ |  |  |  |
| 9. BUILT-IN APPLIANCES (RANGE/OVEN, ATTACHED MICROWAVE, HOOD/FAN, DISHWASHER, DISPOSAL, etc.)? _____ | ☐ | ☐ | ☐ |
| 10. PRESENT INFESTATION, OR DAMAGE FROM PAST INFESTATION OF WOOD DESTROYING INSECTS OR ORGANISMS which has not been repaired? _____ | ☐ | ☐ | ☐ |
| 11. DRAINAGE, GRADING OR SOIL STABILITY OF LOT? _____ | ☐ | ☐ | ☐ |
| 12. OTHER SYSTEMS AND FIXTURES: CENTRAL VACUUM, POOL, HOT TUB, SPA, ATTIC FAN, EXHAUST FAN, CEILING FAN, SUMP PUMP, IRRIGATION SYSTEM, TV CABLE WIRING OR SATELLITE DISH, OR OTHER SYSTEMS? _____ | ☐ | ☐ | ☐ |

**Also regarding the property identified above, including the land, other improvements, and fixtures located thereon, do you know of any:**

|  | Yes* | No | No Representation |
|---|---|---|---|
| 13. ROOM ADDITIONS OR OTHER STRUCTURAL CHANGES? _____ | ☐ | ☐ | ☐ |
| 14. ENVIRONMENTAL HAZARDS (substances, materials or products) including asbestos, formaldehyde, radon gas, methane gas, lead-based paint, underground storage tank, or other hazardous or toxic material (whether buried or covered), contaminated soil or water, or other environmental contamination? _____ | ☐ | ☐ | ☐ |
| 15. COMMERCIAL OR INDUSTRIAL NUISANCES (noise, odor, smoke, etc.) affecting the property? _____ | ☐ | ☐ | ☐ |
| 16. VIOLATIONS OF BUILDING CODES, ZONING ORDINANCES, RESTRICTIVE COVENANTS OR OTHER LAND-USE RESTRICTIONS OR BUILDING CODES INCLUDING THE FAILURE TO OBTAIN PROPER PERMITS FOR ROOM ADDITIONS OR OTHER STRUCTURAL CHANGES? _____ | ☐ | ☐ | ☐ |
| 17. UTILITY OR OTHER EASEMENTS, SHARED DRIVEWAYS, PARTY WALLS OR ENCROACHMENTS FROM OR ON ADJACENT PROPERTY? _____ | ☐ | ☐ | ☐ |
| 18. LAWSUITS, FORECLOSURES, BANKRUPTCY, TENANCIES, JUDGMENTS, TAX LIENS, PROPOSED ASSESSMENTS, MECHANICS' LIENS, MATERIALMENS' LIENS, OR NOTICE FROM ANY GOVERNMENTAL AGENCY that could affect title to the property? _____ | ☐ | ☐ | ☐ |
| 19. OWNERS' ASSOCIATION OR "COMMON AREA" EXPENSES OR ASSESSMENTS? _____ | ☐ | ☐ | ☐ |
| 20. FLOOD HAZARD or that the property is in a FEDERALLY-DESIGNATED FLOOD PLAIN? _____ | ☐ | ☐ | ☐ |
| 21. PRIVATE ROAD(S) OR STREETS adjoining the property? _____ | ☐ | ☐ | ☐ |
| a.   If yes, do you know of an existing owners association or maintenance agreement to maintain the road or street? _____ | ☐ | ☐ | ☐ |

If you answered "Yes" to any of the above 21 questions, please explain (Attach additional sheets, if necessary):

Owner Initials and Date _R___T_   _4/20/10_        Owner Initials and Date _____

Purchaser Initials and Date _____        Purchaser Initials and Date _____

# NC Real Auctions, LLC
## 202 Red Mountain Rd
## Rougemont, NC 27572
### Phone: 919-616-4217,    Fax: 919-528-4564

## DISCLOSURE OF INFORMATION ON LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS

**Lead Warning Statement**

*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not taken care of properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, landlords must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Tenants must also receive a federally approved pamphlet on lead poisoning prevention.*

**Landlord's Disclosure (initial)**

_RWT_    (a)  Presence of lead-based paint and/or lead-based paint hazards   *(check one below):*
☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

☑ Landlord has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

_RWT_    (b)  Records and reports available to the Landlord   *(check one below):*
☐ Landlord has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

☑ Landlord has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Tenant's Acknowledgment (initial)**

_____    (c)  Tenant has received copies of all information listed above.
_____    (d)  Tenant has received the pamphlet  *Protect Your Family from Lead in Your Home.*

**Agent's Acknowledgment (initial)**

_RVD_    (e)  Agent has informed the Landlord of the Landlord's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. MAKES NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION.

_Seller_
~~LANDLORD~~    _____    **DATE**   _4/20/10_

**LANDLORD**    _____    **DATE**   _____

_Buyer_
~~TENANT~~    _____    **DATE**   _____

**TENANT**    _____    **DATE**   _____


**PREPARED BY: Ron Daniels, Managing member**
STANDARD FORM 430-T  Revised 7/2002 © 7/2009. North Carolina Association of REALTORS®, Inc.
RealFAST® Software, ©2010, Version  8.16. Software Registered to: Office Manager, NC Real Auctions, LLC



Page 1 of 2

Agent ___ NC Real Auctions, LLC / Ron V Daniels ___ 4/20/10

Date

**PREPARED BY: Ron Daniels, Managing member**
STANDARD FORM 430-T Revised 7/2002 © 7/2009. North Carolina Association of REALTORS®, Inc.
RealFA$T® Software, ©2010, Version 6.16. Software Registered to: Office Manager, NC Real Auctions, LLC

Tenant(s) _____ _____

Landlord(s) _____ _____

Case 09-80912   Doc 51-1   Filed 06/03/10   Page 10 of 21

# WORKING WITH
# REAL ESTATE AGENTS

*Agents must retain this acknowledgment for their files.*

**This is not a contract**

By signing, I acknowledge that the agent named below
furnished a copy of this brochure and reviewed it with me.

Robin Wagoner Tillery

*Buyer or Seller Name (Print or Type)*

*Robt m. Ly~ Tillery*

*Buyer or Seller Signature*

_____

*Buyer or Seller Name (Print or Type)*

_____

*Buyer or Seller Signature*

4-20-2010

*Date*

N C REAL Auctions LLC

*Firm Name*

RON DANIEL  80510

*Agent Name*                    *License Number*

**Disclosure of Seller Subagency**
*(Complete, if applicable)*

❏ *When showing you property and assisting you in the
purchase of a property, the above agent and firm will
represent the SELLER. For more information, see "Seller's
Agent Working with a Buyer" in the brochure.*

*Buyer's Initials Acknowledging Disclosure:* _____

Inventory

Robert Wagner Tillery – Durham, NC

Lamp

Entertainment Center

Exhibit C

Onkyo amplifier

Sony dual cassette player

Technics  turn table

JVC  CD changer

Mahogany rocking chair

Mahogany sled chair

Quilt top

Bookcases - two 3' X 28", two 36" X 7'

Six floor lamps

Lazy Boy 2 – man, olive green upholstered recliner

Olive green upholstered couch

Sony 32" color TV

TV stand

VCR storage case

53" tall wooden plant stand w/ spiral legs

Fireplace set

Tobacco Harvest print by Kenny  Glenn #355/500 Prime Time

Burly Crop 83 Harvest scene print #500

5 gallon glass jug

Bob Blake Farm Print 1956

2 – Bob Blake Farm Print 1961

Antique hand crocheted bedspreads

Silvertone chord organ

Collection of Norman Rockwell & Royal Windsor plates – numbered & hand painted

4-drawer maple chest

Secretary with chair (needle point seat)

Match collection

Old coins – Mercury dimes, half dimes, 3-cent piece, Buffalo nickels, wheat pennies, Liberty Quarter, Duke Power token, silver dollars ,1854 Half-dime,  1853 Half-dime, 1856 3-cent pieces

Electrical insulators

Toshiba transistor radio

L&M cigarette Zippo lighters

Arnex pocket watch

Elgin pocket watches

Westclox pocket watch

Cameo brooch

Old Timex watches

McClung appliances cigarette lighters

Duke cigarette lighter

Old pocket knives

Benrus watch

Old clickers

Ladies Bulova watch

Antique spectacles

Ladies Elgin watch

Gruen watch

Picture broach of male

Brazilian bills – 50, 20, 10

Waltham watch

10K child's bracelet

Sterling silver antique belt buckle

State of NC, $2 note #244 – Act of 1662

1946 Booker T Washington half dollar

10K man's ring, size 9 ½

Brass school bell

Costume jewelry

Estate jewelry

Tobacco peg

Grainger pipe tobacco

King Bee pipe tobacco

Adam cigarettes

Tyron cigarettes

Gatlinburlier cigarette

Brass service desk bell

2 bags of Bull Durham tobacco with wrappers

Aladdin hand warmers

Pecan vanity with mirror

Nikon binoculars

105mm  M14 l shell casing

4 piece full bedroom suite

Oval pedestal night stand

Stetson men's hat, size7 ½

Treadmill

Ceramic pitchers

Salt dishes

English china

Figurines

Hull pitcher

Royal Haeger pitcher

Wood sculpture

Nippon

Occupied Japan

Norcrest  china

Hand carved walking cane

Sharp LCD color hand TV

Cobra CB

Copper umbrella stand

Oak etched framed mirror

5th wheel lock

Old collectible newspapers – Durham Herald

Nikon 35mm camera

Kodak Brownie movie projector

Vivitar auto flash

Nikon lens

Nikon N2000 35mm camera

Albinar 55mm haze zoom lens & 70 mm zoom lens

Hitachi VHR camcorder

Panasonic camcorder

Decorative metal stand

Milk glass plate

Milk glass punch bowl & cups

Etched glass bowls & scalloped plates

Sandwich glass

Brandy decanter & glasses

Glass cake base

Mahogany side board

Mahogany dining table with 6 chairs

Castleton china (Sunny vale), 41pieces

Sausage grinder

Nabisco cracker tins

Turkey platters

Haviland & Co.  Limoges china (France), 28 pieces

Salt shakers

Winterling Heritage china, 46 pieces

Silver

Bavaria china

Old doll

Arcade No. 6 coffee grinder

Glass juice squeezers

Brass 50 lb scale

Flat iron

Cast iron corn muffin pan

Stamp Collection:  Apollo 8, Marilyn Monroe, Presidents of the US (Washington to Kennedy), Australian stamps, Liberia stamps, Malta, Nicaragua, Polska, Uruguay, South Africa, Ceskoslovenska

Weber charcoal grill

Holland grill

Aluminum step ladder

Album

Poster – American Tobacco, Reidsville – 84 of 1000

Wood dough bowl

45 Cal. Semi automatic rifle – Commando Mark 45 63587

Record collection

Rival crock pot

Ceramic eggs

Pepsi collector glasses

2 NC milk bottles

Old pipes (10/2/41)

Old 7-Up & Mt Dew bottles

Shot glass collection

Tobacco pipes

Roseville Pottery (784 – 8")

Panasonic  8 track tape player & tape collection

2 – Old clock cases

Bunn coffee maker

Corn knife

Huckleberry Hound silver plates

Yogi Bear silver plates

2- Dennis the Menace silver plate

Wood block cutlery set

Milk glass scalloped bowl

3 – card tables

2 – hand saws

2 – coping saws

Limb saw

 Extension ladder

Golf set

Horse hanes

McCulloch chain saw

275 gal flat drum

Ross walkie talkie

B&D palm sander

Bread box

JC Higgins bolt action shot gun

Lasko electric fan

Antique buggie seat

Snow sled

Tapestry framed mirrors

Whirlpool washer

10 section solid oak entertainment center

Frigidaire refrigerator

Child's rocking chair

Seth Thomas mantle clock

Vanity set

Wine rack

Green book case

Chrometta 8 mittohner , made in Germany

Kronor 2-pc stainless carving set

Jerk strap

Cast iron lion bookend

Cast iron pot & pans

Gott cooler

Green secretary

Blue dot pots

Gillette adj. razor & case

Straight razor

Maple hutch

Cast iron fry pan

USA pottery

Echo speed beater with wood handle

Lane cedar chest

Decoupage boxes

3 ladder back chairs

Wood flat trunk

Snow skis

Kerosene heater

Fenton vase

Tennis rackets

Table top fish bowls

Mahogany coffee table

Wood plane propeller

Skil saw

Craftsman jig saw

B & D 12 v. compressor

Dennis the Menace comic books

Fold top sliding desk

1890 Ready Reckoner & Log Books

Fanner 50 pistol

PAL pistol

4 pair metal saw horses

Sliding door bar

Planter Adv. Bank

2 Rail road lamps

2 Ocean City salt water reels

Metal  Erector set

Shakespeare bait cast reel

Propane cooker

Draw knife

Manual punch

Cow bell

Ceramic/Steel press

Single tree

Ice tongs

Yard tools

Oak fern table

Old toys

Chesterfield cigarette float prints

Viewmaster electric projector

Dino fuel bank

Hallmark Startrek Christmas ornaments in box

BB pistols

Games:  Trival Pursuit, Pictionary, Clue

Large picnic basket

Oak piano stool

4 steel wagon wheels

Homelite gas blower

2 hydro slides

Connelly water skis

Craftsman chain saw

Push lawn mower

Portable air tank

Scott spreader

Horse shoes

10 cent Pepsi box

Table vise


***ESTIMATED AUCTION VALUE $5,500.00***